IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Robert Ploscowe,          )
                          )
          Plaintiff,      )  Case No. C-1-01-819
                          )
     vs.                  )
                          )
Kadant, <u>et al.</u>,          )
                          )
          Defendants.     )

<u>O R D E R</u>

This matter is before the Court on motions for summary judgment filed by Defendants Kadant, Inc. and Thermo Electron Corporation (Doc. No. 11) and Defendant Kadant Black Clawson, Inc. (Doc. No. 12). Also before the Court are Plaintiff Robert Ploscowe's motion to strike testimony of Kenneth Stiers offered in support of summary judgment (Doc. No. 14), motion to file unpublished cases (Doc. No. 16), and motion to file sur-reply brief (Doc. No. 20). For the reasons that follow, Defendants Kadant, Inc. and Thermo Electron Corporation's motion for summary judgment (Doc. No. 11) is well-taken and is **GRANTED**; Defendant Kadant Black Clawson, Inc.'s motion for summary judgment (Doc. No. 12) is well-taken and is **GRANTED**; Plaintiff Robert Ploscowe's motion to strike Kenneth Stiers' testimony is not well-taken (Doc. No. 14) and is **DENIED**; Plaintiff's motions to file unpublished cases and a sur-reply brief (Doc. Nos. 16 & 20) are well-taken and are **GRANTED**.

I. Background

In this case, Plaintiff Robert Ploscowe claims that he was selected for termination from his position as a purchaser with Kadant Black Clawson, Inc. ("KBC") during a reduction-in-force in May 2001 because of his age and religion, and in retaliation for having earlier filed a complaint of discrimination.

Plaintiff is Jewish and was in his early 50's at the relevant times in this case. In 1995, KBC[1] hired Plaintiff as a buyer/planner at the Middletown, Ohio plant. KBC manufactures papermaking machines. As a buyer/planner, Plaintiff's duties were to purchase materials and deal with vendors. Plaint. Dep. at 13. Plaintiff was responsible for purchasing a variety of items, from whole machines, to spare parts, to run-of-the-mill office supplies, for both the Middletown manufacturing plant and the Rayville, Louisiana plant. See id. at 13-16.

---

[1] The corporate histories of the defendant corporations are more complex than the procedural history of the case itself. According to the affidavit of Kenneth Stiers, KBC's human resources director, Plaintiff was originally hired into the Shartle Division of The Black Clawson Company. In 1997, the Shartle Division was sold to BC Acquisition Corp. and renamed Thermo Black Clawson, Inc. a wholly-owned subsidiary of Thermo Fibertek, Inc. In 2001, Thermo Fibertek changed its name to Kadant, Inc. In December 2001, Thermo Black Clawson, Inc. changed its name to Kadant Black Clawson, Inc. During his period of employment, Plaintiff worked for The Black Clawson Company and Thermo Black Clawson, Inc. See Doc. No. 12, Stiers Aff. ¶¶ 7-11. For ease of reference, however, the Court will simply refer to KBC as Plaintiff's employer.

2

Although Plaintiff does not present hostile environment claims in this case, he says that he was subjected to a number of offensive or anti-Semitic incidents during his employment with KBC.  On one occasion, Plaintiff complained to HR Director Stiers that Christmas decorations were put up in the office lobby, but no Hanukkah or Kwanza decorations.  According to Plaintiff, Stiers "sloughed off" his complaints, saying, "If you want Hanukkah decorations, you go out and buy them yourself and put them up yourself." Id. at 31.  Plaintiff also claims that Stiers and other employees told Jewish jokes in his presence.  Id. at 77, 167-68.  Plaintiff also says that Stiers commented to him about the high percentage of Jewish neighbors in his condominium complex.  Id. at 79.  On another occasion, an employee said to Plaintiff, "Your people killed my God."[2] Id. at 39.

Another time, a co-worker, Tom Graziano brought to work a Nazi flag with a swastika that he had purchased at an auction. It should be noted at this point that there is no claim that Graziano was a racist or a Nazi sympathizer.  Instead, Graziano was a collector of war memorabilia and had brought the flag to work so that another employee could frame it for him. Apparently, Norwegian partisans had captured the flag from a

---

[2]    This comment was apparently made in reference to a belief that the Jews were responsible for the death of Jesus because when given the option by the Romans of saving either Barrabas or Jesus from crucifixion, they chose Barrabas.  See Did the Jews Kill Jesus?, http://jewish.com/askarabbi/askarabbi/askr4201.htm (visited September 4, 2003).

German battleship during World War II.  In any case, Plaintiff
was offended by the presence of the flag in the office and
complained about it to Stiers.  According to Plaintiff, Stiers
"rebuffed" his complaint, saying "Bob, that's just Tom.  Toughen
up your skin."  Id. at 171.  On another occasion that Plaintiff
found offensive, Steve Weatherly, who was vice president of
operations and in overall charge of Plaintiff's department,
passed out small metal crosses to all the employees in the
department but him.  Id. at 88.

In October 2000, Max Caldwell, then president of KBC,
decided to decentralize purchasing functions and transfer some of
the purchasing responsibilities from Middletown to the Theodore,
Alabama facility.  The plan to decentralize purchasing functions
would result in the elimination of one buyer/planner position in
Middletown.  According to KBC, Plaintiff was selected for
termination at this time because most of the items he was
responsible for purchasing were catalog orders, and hence it
would be easier for the person in Alabama to pick up his
responsibilities, and because Plaintiff was not viewed as an
employee who provided good service to internal customers.  See
Doc. No. 12, Stiers Aff. ¶¶ 13-15.

Plaintiff was given the option of resigning immediately
and taking five weeks of severance pay or remaining with the
company for sixty more days with the opportunity to conduct a job
search during work hours.  Plaintiff elected to remain with the
company so he could look for a new job.  Three days after he was

4

notified that his position was being eliminated, Plaintiff presented a memorandum to Stiers in which he alleged that he was selected for termination because of his age and religion. Shortly after that, Plaintiff's brother, who is a labor-employment law attorney practicing in New Jersey, sent a letter to KBC which alleged that Plaintiff was selected for termination because of age and religion. See Doc. No. 12, Ex. C. A second letter from Plaintiff's brother outlined other alleged acts of discrimination and threatened to file a complaint of discrimination with the EEOC unless he received an appropriate response from KBC. Plaint. Dep. Ex. 6.

However, before the end of Plaintiff's final sixty days of employment, Max Caldwell resigned and was replaced as president by Ed Healy. Healy, in reviewing some of the decisions that Caldwell had made, decided that the decision to decentralize purchasing was a bad one. Therefore, Healy reversed the decision to eliminate Plaintiff's position and Plaintiff was restored to his original buyer/planner position.

According to KBC, early 2001 marked the beginning of a recession which particularly affected companies in the papermaking machine segment. Because of the recession, in April 2001, Healy decided that a reduction in force was necessary and sought recommendations for layoffs from the various department managers. From his group, Weatherly selected five employees for termination, including three from the purchasing department. The three employees selected for termination in the purchasing

department were Plaintiff, Donald Amburgey, and Gary Saylor.  At
the time, Plaintiff was age 55, Amburgey was 64, and Saylor was
52.  KBC says that Plaintiff was selected for termination because
he was abrasive towards co-workers and internal customers and
frequently complained about his workload, which was not viewed by
his manager as being excessive.  See Doc. No. 12, Stiers Aff. ¶¶
25-27, 32, 35, Stiers Dep. Ex. 9.  These were not the only
layoffs; KBC ended up terminating twenty-seven employees at
various times throughout the year.

          After his termination, Plaintiff filed a complaint of
discrimination with the EEOC and received a right-to-sue letter
on September 10, 2001.  Complaint ¶ 8.  In his complaint,
Plaintiff brings claims against Kadant, Inc., Thermo Electron
Corporation, and Kadant Black Clawson, Inc. for age
discrimination under the Age Discrimination in Employment Act
("ADEA"), 29 U.S.C. § 621, et seq., and the Ohio Civil Rights
Act, Ohio Rev. Code § 4112.99, religious discrimination under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et
seq., and the Ohio Civil Rights Act, retaliation under Title VII
and the Ohio Civil Rights Act, and wrongful termination in
violation of Ohio public policy.

          After the close of discovery, Kadant, Inc. and Thermo
Electron Corporation filed a motion for summary judgment on all
of Plaintiff's claims.  See Doc. No. 11.  In their motion, these
Defendants argue that, although they are parent corporations of
KBC, they were not Plaintiff's employer nor are there any facts

which support a piercing the corporate veil theory of liability. KBC also filed a motion for summary judgment (Doc. No. 12) on all of Plaintiff's claims in which it argues that Plaintiff cannot make out a prima facie case of age or religious discrimination, and in any event, there is no evidence from which a jury could infer that the decision to terminate Plaintiff was because of age or religious discrimination.  Regarding the retaliation claim, KBC argues that there is no causal connection between Plaintiff's complaint of discrimination and the decision to terminate him. Finally, assuming Plaintiff's claims survive the initial challenges, KBC argues that because of after-acquired evidence, Plaintiff is not entitled to front pay, reinstatement or other equitable relief, nor is there any evidence suggesting that an award of punitive damages is appropriate.

Plaintiff first filed a motion to strike certain paragraphs of Kenneth Stiers' affidavit filed in support of KBC's motion for summary judgment (Doc. No. 14) on the grounds of hearsay and because they allegedly contradict his earlier sworn deposition testimony.  Plaintiff filed a memorandum in opposition to KBC's motion for summary judgment (Doc. No. 15), but did not file a response to Kadant, Inc. and Thermo Electron Corporation's contention that they were not Plaintiff's employer and, therefore, not liable for the alleged discriminatory and retaliatory acts.  After he submitted his memorandum in opposition to KBC's motion for summary judgment, Plaintiff filed a motion to file a copy of an unreported decision he cited in his

7

brief.  <u>See</u> Doc. No. 16.  Then, after KBC filed its reply brief, Plaintiff filed a motion to file a sur-reply brief on the grounds that KBC made several misstatements of fact and law in its reply brief.

These motions have been fully briefed and are now ready for disposition.

## II. <u>Plaintiff's Motion to Strike Testimony</u>

The Court first takes up Plaintiff's motion to strike certain paragraphs of Kenneth Stiers testimony since resolution of this motion potentially affects the outcome of KBC's motion for summary judgment.  Specifically, Plaintiff moves to strike paragraph 15 of Stiers' affidavit on the grounds of hearsay and because it allegedly contradicts his deposition testimony and paragraphs 32, 34, and 37 on the grounds of hearsay.  In response, KBC argues that paragraph 15 is not contradictory and to the extent that any of these paragraphs contain hearsay, they fall within an exception to the hearsay rule because they are not offered for the truth of the matter asserted, but rather to reflect KBC's state of mind regarding Plaintiff's termination. In the alternative, KBC provides cites to the testimony of other witnesses who do have first hand knowledge of the events recounted in Stiers' affidavit.

Affidavits containing hearsay should not be considered in ruling on a motion for summary judgment.  <u>Dole v. Elliott Travel & Tours, Inc.</u>, 942 F.2d 962, 968-69 (6th Cir. 1991).  On the other hand, the trial court may consider on summary judgment

8

statements which fall into an exception to rule against hearsay, such as statements reflecting the declarant's state of mind. Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1249-50 (6th Cir. 1995); see also Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993).

> Paragraph 15 of Stiers' affidavit states:
>
> When the reduction of one purchasing agent was planned for late October 2000, Mr. Ploscowe was selected for termination for two primary reasons. First, Mr. Ploscowe purchased office supplies and machine part items from catalogs and those duties were the easiest to learn of the purchasing activities. Hence, the person in Theodore, Alabama, or the remaining buyer/planners could be easily trained to perform the duties which had been performed by Mr. Ploscowe. Second, Robert Ploscowe was viewed by his managers as not providing good service to his internal customers, his co-workers who needed his assistance in purchasing equipment parts and supplies.

Stiers Aff. ¶ 15. It is a little surprising that Plaintiff challenges this particular paragraph inasmuch as he was not in fact terminated as a result of the plan to decentralize the purchasing function. In other words, although the plan to terminate Plaintiff gave rise to his retaliation complaint, no adverse employment consequences arose from the plan to decentralize purchasing. Thus, the reasons Stiers proffers for selecting Plaintiff for termination at this time are essentially irrelevant and do little to prejudice Plaintiff's ability to withstand KBC's motion for summary judgment.

In any event, the Court rejects Plaintiff's contention that this paragraph is contradictory and/or consists of inadmissible hearsay. Plaintiff claims that this paragraph is

contradictory because in his deposition Stiers stated that the decision to eliminate a buyer/planner position had nothing to do with the performance of any buyer.  Plaintiff, however, misreads Stiers' deposition testimony.  Stiers clearly testified in his deposition that the decision to eliminate a purchasing function was a business philosophy.  See Stiers Dep. at 93 ("That decision [to decentralize purchasing] came from Mr. Healy's predecessor, [] Max Caldwell, and I think Max's decision was based primarily upon his philosophy that purchasing or at least a part of purchasing needed to be decentralized and closer to the manufacturing effort, i.e., Mobile, Alabama.").  Stiers then averred in his affidavit that the decision to eliminate Plaintiff's position in particular, as a consequence of having adopted that philosophy, was because of his performance.  Thus, there is nothing contradictory in these two statements - there were simply two different levels of decisionmaking involved in the process that resulted in the planned elimination of Plaintiff's position.

Finally, the Court agrees with KBC that this paragraph, as well as the others challenged by Plaintiff, fits into the state of mind exception to the rule against the admission of hearsay.  See Fed. R. Evid. 803(3).  In his affidavit, Stiers is essentially acting as a corporate spokesman in order to proffer legitimate, non-discriminatory reasons why Plaintiff was selected for termination.  Although Stiers did not have first hand knowledge of the events which led Plaintiff's supervisors to

10

conclude that Plaintiff should be included in the reduction in force, his affidavit demonstrates that he was made aware of the reasons Plaintiff was selected, and, therefore, is in position to testify about the corporate state of mind leading to Plaintiff's termination.

Even if the challenged paragraphs do not fall within the state of mind exception to the hearsay rule, the Court believes that consideration of Stiers' affidavit would not affect any substantial rights of Plaintiff. Kelly's Auto Parts, No. 1, Inc. v. Boughton, 809 F.2d 1247, 1255 (6th Cir. 1987)(errors not affecting substantial rights are harmless). First, the employer is not required to prove that its legitimate, non-discriminatory reason is true. Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1329 (6th Cir. 1994). Thus, it could be argued that the employer's legitimate, non-discriminatory reason is never being offered for the truth of the matter asserted, it is simply being offered. Second, as KBC has shown in its memorandum in opposition to the motion to strike, the record is replete with witnesses who do have first hand knowledge of Plaintiff's alleged shortcomings as a purchaser. Thus, given that fact, the Court believes that KBC's submission of Stiers' affidavit as a summarization of the corporate reasoning behind Plaintiff's termination in support of the motion for summary judgment is not prejudicial to Plaintiff.

Accordingly, Plaintiff's motion to strike the paragraphs referenced above is not well-taken and is **DENIED.**

11

II. <u>Motions for Summary Judgment</u>

        At this point, the Court notes that the Local Rules of
this district require a party to attach to his memorandum copies
of any unpublished decisions cited in his brief.  <u>See</u> S.D. Ohio
Civ. R. 7.2(b)(4).  Accordingly, Plaintiff's motion to file a
copy of the unreported decision cited in his brief (Doc. No. 16)
is well-taken and is **GRANTED**.

A. <u>Summary Judgment Standard of Review</u>

        Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The evidence presented on a motion for summary judgment
is construed in the light most favorable to the non-moving party,
who is given the benefit of all favorable inferences that can be
drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654
(1962).  "The mere existence of <u>some</u> alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).  The
Court will not grant summary judgment unless it is clear that a
trial is unnecessary.  The threshold inquiry to determine whether
there is a need for trial is whether "there are any genuine
factual issues that properly can be resolved only by a finder of

12

fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id.</u>

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert. dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a

13

directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

B. Kadant, Inc. and Thermo Electron's Motion for Summary Judgment

14

As indicated, Kadant, Inc. and Thermo Electron Corporation move for summary judgment on all of Plaintiff's claims on the grounds that they were not Plaintiff's employer nor are there any facts that demonstrate liability under a piercing the corporate veil theory.  Plaintiff did not file any response to this motion.

Although the Sixth Circuit recognizes a single employer theory of liability under Title VII, <u>see</u> <u>Swallows v. Barnes & Noble Book Stores, Inc.</u>, 128 F.3d 990, 993 (6th Cir. 1997), as Defendants correctly point out, by failing to respond to their motion for summary judgment, Plaintiff has not met his burden of coming forward to show an issue of material fact regarding these Defendants' status as his employer.  <u>See</u> <u>Armbruster v. Quinn</u>, 711 F.2d 1332, 1339 (6th Cir. 1983)(plaintiff bears burden of establishing prima facie case of single employer status); <u>see</u> <u>supra</u>, at 15 ("Rule 56(e) requires the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.")(internal quotation marks omitted).

Accordingly, Defendants' motion for summary judgment is well-taken and is **GRANTED**.  Plaintiff's claims against Kadant, Inc. and Thermo Electron Corporation are **DISMISSED WITH PREJUDICE.**

### B. <u>KBC's Motion for Summary Judgment</u>

At the onset of the analysis of this motion, the Court notes that Plaintiff's federal and state law statutory

discrimination claims, as well as his state law public policy
claim, are subject to the same federal evidentiary standards.
Courtney v. Landair Transport, Inc., 227 F.3d 559, 563 (6th Cir.
2000); Jones v. Kilbourne Medical Lab., 162 F. Supp.2d 813, 831
n.20 (S.D. Ohio 2000).  Therefore, the Court may consider the
federal and state law discrimination claims together.

### A. Religious Discrimination

Plaintiff claims that he was selected for termination
during the reduction-in-force because of his religion.

A plaintiff establishes a prima facie case of
discrimination if he presents direct evidence that he was
discriminated against on the basis of a forbidden characteristic.
Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1081 (6th
Cir. 1994).  Once the plaintiff has produced direct evidence of
discrimination, the burden shifts to the defendant to prove it
would have taken the same action against the plaintiff without
the discriminatory motivation.  Id.  However, if the plaintiff
fails to produce direct evidence of discrimination or if the
court does not find credible the plaintiff's proffered evidence
of direct discrimination, then the mode of analysis is the
McDonnell Douglas burden shifting framework.  Terbovitz v. Fiscal
Court of Adair County, 825 F.2d 111, 115 fn. 3 (6th Cir. 1987).

Under the McDonnell Douglas framework, a plaintiff may
establish a prima facie case of discrimination based on
circumstantial evidence by showing that: 1) he is a member of a
protected class; 2) he suffered adverse employment action; 3)

that he was qualified for the job lost or not gained; and 4) that a person not in the protected class replaced him. <u>Id.</u> A plaintiff may also satisfy the last part of the <u>McDonnell Douglas</u> test by showing that the defendant treated similarly-situated non-protected persons more favorably than the plaintiff. <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995).

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for its actions. <u>Manzer</u>, 29 F.3d at 1082. If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are but a pretext for discrimination. <u>Id.</u> However, the burden of persuasion remains with the plaintiff at all times. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511 (1993).

The plaintiff may prove pretext in three ways: 1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the proffered reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient for the defendant to act as it did. <u>Kline v. Tennessee Valley Authority</u>, 128 F.3d 337, 346 (6th Cir. 1997). When the plaintiff proves pretext by the first or third methods, the fact finder may infer discrimination and the plaintiff need not produce any additional evidence of discrimination. <u>Id.</u> In the second situation, the factual basis for the defendant's

17

actions is not challenged; therefore, the plaintiff must adduce additional evidence of discrimination in order to prevail.  Id. at 346-47.

Plaintiff has produced no direct evidence that he was terminated because of his religion.  Therefore, the proper mode of analysis is the McDonnell Douglas burden-shifting format.  In a reduction-in-force ("RIF") case, which is the situation presented here, the McDonnell Douglas format is altered:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company.  An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge.  However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

Barnes v. GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). In the RIF context, establishing the McDonnell Douglas elements alone does not give rise to an inference of discrimination. Id. Therefore, the plaintiff must produce additional direct, circumstantial, or statistical evidence which indicates that the employer terminated the plaintiff for impermissible reasons.  Id. In a RIF situation a plaintiff will not be able to show that he was replaced by someone outside of the protected class. Therefore, the showing of additional evidence of discrimination substitutes for the final step.  Gault v. Zellerbach, 981 F. Supp. 533, 537 (N.D. Ohio 1997).  In addition, the plaintiff may satisfy his burden under the fourth prong by showing that a

18

comparable non-protected person was treated better than the plaintiff with respect to the RIF.  <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 350 (6th Cir. 1998).

The Court agrees with KBC that the record, even viewed in the light most favorable to Plaintiff, fails to show that he was terminated in the RIF because of his religion.  As an initial matter, Plaintiff cannot show that other non-Jewish employees were treated more favorably than he was with respect to the RIF.  By Plaintiff's own estimation, he was the only person of Jewish faith who worked for KBC at the time of the RIF.  <u>See</u> Plaint. Dep. at 35; Complaint ¶ 16.  Thus, by process of elimination, every other employee at KBC was not Jewish.  Plaintiff, however, was not the only employee terminated in the RIF.  Therefore, employees not in the protected class were treated the same as Plaintiff because they were also selected for termination.  Consequently, Plaintiff fails to establish a prima facie case of religious discrimination under <u>Ercegovich</u>.

The Court further finds that Plaintiff has failed to adduce other direct, circumstantial, or statistical evidence which indicates that he was discharged because of his religion.  The evidence Plaintiff has marshaled in this area consists of several incidents which one might otherwise find in a hostile environment lawsuit.  None of this evidence, however, demonstrates that religious animus played any part in the decision to terminate Plaintiff.

The first incident is the statement from a co-worker that, "Your people killed my God." While this statement is anti-Semitic, the undisputed evidence is that the person who made this statement was a draftsman from another department, who was not Plaintiff's supervisor and who did not have any line-of-authority responsibility over Plaintiff. Plaint. Dep. at 39, 44, 45. This statement was made during an after-hours golf league in which none of Plaintiff's direct supervisors participated. Id. Plaintiff, in fact, never reported the incident to any of his supervisors. Id. at 47. It is well-settled that discriminatory remarks made by non-supervisory co-workers who were not involved in the decision-making process are not evidence of animus. Johnson v. Kroger Co., 319 F.3d 858, 868 (6th Cir. 2003); Smith v. Leggett Wire Co., 220 F.3d 752, 760 (6th Cir. 2000).

A second incident of alleged religious discrimination occurred when Steve Weatherly distributed small metal crosses to Plaintiff's co-workers. It is important, however, to put this incident into some context. The evidence is not that there was some ceremony or gathering of employees in which Weatherly gave crosses to everyone except Plaintiff. Rather, Weatherly's undisputed testimony is that he "did not go up and just go around the building handing crosses out." Weatherly Dep. at 27. Instead, Weatherly testified, "If you came up to me and we were having a discussion around faith and it was appropriate, then I would, you know, offer a cross." Id.

Weatherly's practice of giving crosses to some employees is like the situation described in <u>Korna v. Veda, Inc.</u>, No. 95-3798, 1996 WL 506515 (6th Cir. Sept. 5, 1996), in which the plaintiff, who was a Muslim, complained of religious discrimination because his supervisor, who was known to be a religious man, held weekly bible study and prayer meetings on company premises.  <u>Id.</u>  The Court concluded that this practice was not evidence of religious discrimination: "The fact that bible meetings were held by certain individuals with defendant's knowledge is not evidence that defendant discriminated against non-Christians."  <u>Id.</u> at **4.  Similarly, Weatherly's actions do not demonstrate religious animus, particularly when there is no evidence that Weatherly intended to exclude or single out Plaintiff or otherwise made disparaging or critical remarks about Jews or Judaism.  <u>See id.</u>

The remaining incidents of alleged religious discrimination - being "rebuffed" on his complaints about the Christmas decorations and Tom Graziano's Nazi flag and being told Jewish jokes - all involve Kenneth Stiers.  Even assuming the truth of Plaintiff's testimony, the undisputed evidence is, however, that the only part Stiers played in Plaintiff's termination was to inform him of the termination and explain his termination benefits.  <u>See</u> Stiers' Dep. at 86-88.[3]  Because

---

[3]    Stiers testified:

[Y]ou asked me a minute ago if I was involved in the decision, in other words "let's lay off Bob Ploscowe,"

Stiers was not involved in the decision to terminate Plaintiff and there is no evidence that he had any input in the decision to terminate Plaintiff, these actions are not evidence that the decision to terminate Plaintiff was because of religious discrimination.  See Johnson, 319 F.3d at 868 (statements made by an individual who has no authority over the challenged employment action are not indicative of discriminatory intent).  The Court does recognize that discriminatory statements reflective of an overall corporate attitude toward the protected class among managers may show discriminatory intent, Ercegovich, 154 F.3d at 356, however, there is no evidence that anti-Semitic attitudes were prevalent among KBC's management staff.  Therefore, this case is distinguishable from Ercegovich, in which the plaintiff presented evidence that hostility toward older workers was widespread throughout senior management.  See id. at 357.

Furthermore, even assuming that the record evidence takes Plaintiff past the prima facie stage, no evidence in the record of probative value rebuts KBC's explanation that Plaintiff was terminated for performance and personality reasons and not because of his religion.  In particular, the performance reviews

no, ma'am, that's not my job.  My job is once the decision has been made to call Bob Ploscowe into my office and tell him that he no longer has a job.

. . .

But, the actual decision is to select the persons who will be laid off, no ma'am, that's not my role.

Stiers Dep. at 86-87.

submitted by Plaintiff consistently note deficiencies with regard to his interactions with other employees.  See Doc. No. 12, Ex. 2, at KBC 000366 (3/31/98 performance review) ("Sometimes Bob gets upset over matters that he shouldn't let upset him.  Noticed a great improvement over last 2 months.  Bob should develop skills further in TBC's system & key people relations in order to be even more effective in his position); id. Ex. 3, at KBC 000377 (12/31/99 performance review) ("Becomes abrasive with others when stress is high which leads to alienation from other team members."; "Bob comes across as a negative person and has a tendency to alienate people."); id. Ex. 4 (2-1-01 performance review)("Needs improvement in the areas of amount of work perform [sic], knowledge of the product, ability to analyze and correct problems, initiative in day to day activities, increase efficiency, and a reduction in negativism to improve overall cooperation."); Plaint. Dep. Ex. 10 (weekly performance summary("I went on to explain to Bob that he is alienating the company from him."; "My comment to Bob was I'm not sure what to do when I have a person who is apparently very unhappy and is alienating people to the point where they will do whatever it takes to avoid having to work with him.").

Plaintiff contends, however, that KBC has offered inconsistent reasons for terminating him.  As explained earlier, however, the decision to eliminate buyer/planner positions because of an economic downturn is not inconsistent with terminating Plaintiff for performance reasons.  The recession is

why a class of positions was eliminated; performance is the specific reason why Plaintiff was selected for termination from among the employees performing the class of positions.

Plaintiff also argues that the abrasive attitude attributed to him by KBC is a recent fabrication and/or coincides with the time he began to complain about discrimination.  To be sure, not every document relating to Plaintiff contains comments addressing an abrasive attitude.  For instance, most of the performance reviews contain positive comments about Plaintiff's knowledge of the purchasing function.  Overall though, reading the documents and deposition testimony of the people who supervised or worked with Plaintiff, there is a consistent theme that Plaintiff did not interact with other people in a positive manner.[4]

---

[4]     See Arbogast Dep. at 88, 112, 113 ("I didn't think he got a well-got along well with internal customers in the organization."); ("On the negative side, did not work well with internal customers."); ("And just basically did not get along well with others in the company."); Brunner Dep. at 38 ("-did I want to work with Bob, no . . . I felt Bob could be very uncooperative in dealing with situations such as what this Exhibit 1 shows."); Cadle Dep. at 19 ("Basically, ma'am, all the comments were the same, they didn't feel like Bob was wanting to work with them as far as trying to help them.  You know, they had customers calling in on the service side that wanted answers and when they would try to get Bob to give them an answer, he'd go off, you know, on them or something . . . . He would get mouthy with them, belligerent with them, you know, things like that."); Stiers Dep. at 21-41 (describing complaints about Plaintiff he had received from internal customers over the years); Weatherly Dep. at 45 ("I had complaints that Bob was not servicing his customers and he was not treating them in a professional manner. . . I heard this from people that worked in the customer service department, the manager of the customer service department, and some of the people at the Rayville facility.").

In summary, the Court finds that the record when viewed in the light most favorable to Plaintiff fails to establish a prima facie case of religious discrimination.  There is no evidence that KBC treated non-Jewish employees more favorably than Plaintiff in the reduction-in-force.  In addition, there is no probative "additional" evidence that the decision to terminate Plaintiff in the reduction-in-force was because of his religion. Alternatively, assuming a prima facie case of discrimination can be established, there is no evidence that KBC's reason for terminating Plaintiff, his performance and abrasive personality, is pretextual.

Accordingly, KBC's motion for summary judgment on Plaintiff's claim of religious discrimination is well-taken and is **GRANTED**.

### B. Age Discrimination

The elements for establishing a claim of age discrimination are the same as the religious discrimination elements except, of course, that age is substituted for religion as the protected characteristic.  It is not disputed that Plaintiff was and is in within the protected age group. Nonetheless, the Court finds that summary judgment in KBC's favor is appropriate.

The Court assumes that Plaintiff can establish a prima facie case of age discrimination.  The Court observes that KBC did retain a younger employee with less experience than Plaintiff - Lee Harper-during the RIF.  The Court still finds, however,

25

that nothing rebuts KBC's explanation that Plaintiff was selected for termination for performance and personality reasons.  The Court has already discussed at length the evidence on Plaintiff's work performance and will not do so again.  Suffice it to say here that Plaintiff's reputation as an employee and a co-worker was not good.

Plaintiff claims that the reasons proffered by KBC for terminating him are pretextual, however, because KBC allegedly failed to follow its own layoff procedures.  The reduction in force policy provides in pertinent part: "In making a selection between several incumbents in the same classification, the main criterion is job performance, although length of service must be recognized and considered."  See Doc. No. 12, Ex. E.  Plaintiff argues that KBC violated this policy because his length of service admittedly was not considered when he was selected for termination and because KBC decided to retain Harper, who had only been with the company for about two months at the time of the RIF.

The Court recognizes that an employer's deviation from established layoff procedures can be viewed as evidence of pretext.  See Skalka v. Fernald Env. Rest. Mgt. Corp., 178 F.3d 414, 422 (6th Cir. 1999).  In this case, however, the policy clearly states that performance is the main criterion in the selection process and all of the evidence in the record is that Plaintiff was not a good performer.  That fact distinguishes this case from Skalka, in which the plaintiff was terminated in a RIF

even though he was the most qualified person according to the employer's own ranking system.  <u>See id.</u>  In other words, unlike the plaintiff in <u>Skalka</u>, Plaintiff was not laid off despite being a good performer with seniority over younger employees who were retained.  Plaintiff's argument essentially proposes that KBC should have violated its layoff procedures by giving more weight to his seniority than his performance.  In any event, since there is no evidence that Plaintiff's performance was not the main reason he was terminated, the fact that KBC did not consider his seniority as well is not evidence of pretext.

In addition, the Court notes that even though KBC retained Harper instead of Plaintiff, KBC terminated Harper for performance reasons about 18 months after Plaintiff was terminated.  Harper Dep. at 37-38.  This indicates two things -- first, that a good performance record truly was the prime consideration for retention in the buyer/planner position; and second, that KBC was not favoring younger employees over older employees, because if had been doing so, Harper would have been retained despite his poor performance.  In the end, KBC treated Harper exactly the same as it did Plaintiff.

Finally, the Court notes the statistical evidence presented by KBC shows that the age of its workforce actually increased after the RIF.  <u>See</u> Doc. No. 12, Stiers Aff. ¶ 30.  In January 2000, the average age of the employees was 44.19 years; on January 1, 2001, the average age was 46.18; on January 1, 2002, the average age was 47.75.  <u>Id.</u>  Had the KBC's workforce

remained static from January 2000 to January 2002, the average age would have been around 46 years of age; yet after the layoffs the average age was 18 months higher than otherwise would have been expected.  The substantial increase in the average age of KBC's employees after the RIF demonstrates that age was not a factor in deciding who to terminate.  See Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir. 1986) (increase in average age from 41.28 to 41.72 showed that employer did not bear discriminatory animus toward older employees); Varga v. Rockwell Int'l Corp., 242 F.3d 693, 701 (6th Cir. 2001) (holding .01 years decrease in average age of workforce after RIF statistically insignificant).

In summary, based on this record, no juror could find that Plaintiff's age was the reason he was terminated in the reduction-in-force.  Accordingly, KBC's motion for summary judgment on Plaintiff's age discrimination claim is well-taken and is **GRANTED**.

## C. Retaliation

Finally, Plaintiff claims that he was terminated in retaliation for having complained about age and religious discrimination in November 2000.

In order to establish a prima facie case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by the discrimination statutes; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the

28

protected activity and the adverse employment action.  <u>See</u>
<u>Harrison v. Metropolitan Gov't</u>, 80 F.3d 1107, 1118 (6th Cir.
1996).  To establish the causal connection required in the fourth
prong, a plaintiff must produce sufficient evidence from which an
inference could be drawn that the adverse action would not have
been taken had the plaintiff not participated in protected
activity.  <u>See</u> <u>EEOC v. Avery Dennison Corp</u>., 104 F.3d 858, 861
(6th Cir. 1997); <u>Jackson v. RKO Bottlers of Toledo, Inc.</u>, 743
F.2d 370, 377 (6th Cir. 1984).

   Initially, the Court agrees with KBC that Plaintiff has
not established a causal connection between the protected
activity and his termination.  The only evidence really
supporting a causal connection is the approximately six months
between his complaint of discrimination and his termination.
Temporal proximity alone, however, is insufficient to establish
the requisite causal connection.  <u>Nguyen v. City of Cleveland</u>,
229 F.3d 559, 566 (6th Cir. 2000).  In <u>Cooper v. City of North</u>
<u>Olmsted</u>, 795 F.2d 1265 (6th Cir. 1986), the Court held that a
four month gap between the complaint and the termination, without
more, was insufficient to establish a causal connection.  <u>Id.</u> at
1272.  In this case, involving a six month gap, the causal
connection between the two events is even more slight.  In fact,
had KBC really wanted to retaliate against Plaintiff, it would
not have restored Plaintiff to his original position after the
new president decided not go through with decentralizing the
purchasing function.

No juror could find that Plaintiff's performance was not the real reason he was terminated.  Accordingly, KBC's motion for summary judgment on Plaintiff's retaliation claim is well-taken and is **GRANTED**.

<u>Conclusion</u>

In conclusion, for the reasons stated, Defendants Kadant, Inc. and Thermo Electron Corporation's motion for summary judgment (Doc. No. 11) is well-taken and is **GRANTED**; Defendant Kadant Black Clawson, Inc.'s motion for summary judgment (Doc. No. 12) is well-taken and is **GRANTED**.  Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Plaintiff Robert Ploscowe's motion to strike Kenneth Stiers' testimony is not well-taken (Doc. No. 14) and is **DENIED.** Plaintiff's motion to file unpublished cases (Doc. No. 16) is well-taken and is **GRANTED**.  The Court has considered Plaintiff's sur-reply brief, so the motion to file that brief (Doc. No. 20) is well-taken and is **GRANTED**.  Plaintiff's sur-reply brief, however, did not affect the decision in this case.

**IT IS SO ORDERED**

Date September 9, 2003         /s Sandra S. Beckwith
                              Sandra S. Beckwith
                              United States District Judge

30