**FILED**

JAN 0 6 2005

LEONARD GREEN, Clerk

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 03-4341

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NOT RECOMMENDED FOR FULL-TEXT
PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations.
Please see Rule 28(g) before citing in a proceeding in a court
in the Sixth Circuit. If cited, a copy must be served on other
parties and the Court.
This notice is to be prominently displayed if this decision
is reproduced.

| | |
|---|---|
| ROBERT PLOSCOWE, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| KADANT, | ) SOUTHERN DISTRICT OF OHIO |
| | ) |
| Defendant-Appellee, | ) |
| | ) |
| THERMO ELECTRON CORPORATION, | ) |
| | ) |
| Defendant-Appellee, | ) |
| | ) |
| THERMO ELECTRON CORPORATION, | ) |
| | ) |
| Defendant-Appellee, | ) |
| | ) |
| KADANT BLACK CLAWSON, INC. | ) |
| | ) |
| Defendant-Appellee | |

Before: GIBBONS and ROGERS, Circuit Judges; BUNNING, District Judge.[*]

ROGERS, Circuit Judge.   Plaintiff Robert Ploscowe appeals the grant of summary

judgment entered in favor of his previous employer, defendant Kadant Black Clawson ("KBC").

Ploscowe alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

*No. 03-4341*
*Ploscowe v. Kadant, et al*

for religious discrimination and retaliation, and the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621 *et seq.*, for age discrimination. Ploscowe also sets forth parallel claims

under Ohio statutory and common law. Because Ploscowe has failed to establish a prima facie case

of religious discrimination and retaliation, and because Ploscowe has failed to establish that KBC's

proffered reasons for his termination were pretextual, we affirm the grant of summary judgment.

**I. Background**

On May 15, 1995, Ploscowe was hired by KBC,[1] an Ohio manufacturer of equipment used

in the paper-making industry, as a buyer/planner at its Middletown, Ohio plant. Ploscowe was 49

years old at the time he was hired. Ploscowe's duties as a buyer/planner included purchasing

materials and dealing with vendors. Ploscowe was responsible for purchasing a range of items,

including whole machines, spare parts, and general office supplies, for the Middletown, Ohio and

Rayville, Louisiana plants.

In October of 2000, Max Caldwell, then president of KBC, made the decision to decentralize

the purchasing function of the business and to transfer a portion of the purchasing responsibilities

from the Middletown plant to KBC's Alabama facility. The result of this decision was the

elimination of one buyer/planner position in the Middletown plant. Ploscowe was chosen for

---

[1]Ploscowe was actually hired by, and initially worked for, KBC's predecessor the Black
Clawson Company and, later, Thermo Black Clawson, Inc. However, because the complex history
of the corporations does not affect the claims at issue, this opinion, for the sake of simplicity, will
refer to the plaintiff's employer as KBC.

*No. 03-4341*
*Ploscowe v. Kadant, et al*

termination, allegedly "because of his poor attitude, abrasiveness, and failure to provide timely service to his internal customers" and because his job functions could be easily learned by another employee.

Ploscowe was notified of his anticipated layoff on November 3, 2000, and given a choice of five weeks' severance pay or continued employment for up to sixty days with an opportunity to conduct a job search. Ploscowe chose to continue his employment during the sixty day period. Three days later, on November 6, 2000, Ploscowe gave Ken Stiers, the Director of Human Resources, a memo alleging that he was selected for termination because of his age and religion. In mid-November, Ploscowe's brother, a labor and employment attorney, sent a letter to KBC alleging employment discrimination and informing KBC that Ploscowe had met with the Equal Employment Opportunity Commission ("EEOC"). On November 27, 2000, Max Caldwell resigned as president of KBC. He was replaced by Ed Healy, who decided not to go forward with the plan to decentralize purchasing. The decision to maintain a centralized purchasing function resulted in Ploscowe's retaining his position.

In the next one to two months, Ploscowe's immediate supervisor, Terry Cadle, and another buyer/planner, Tim Cook, resigned. Cadle was not replaced—a level of management was simply eliminated—and Ploscowe, along with all the other buyer/planners, began reporting to Steve

*No. 03-4341*
*Ploscowe v. Kadant, et al*

Arbogast. As a result of the lost positions, and in response to an alleged spike in business, Lee

Harper, age 39,[2] was hired on March 12, 2001.

KBC states that in early 2001 there was a dramatic reduction in the demand for papermaking

equipment.[3] JA 59. Thus, in April of 2001, one month after Harper was hired, the president of KBC

determined that a reduction-in-force ("RIF") would be required. Five positions would be eliminated

in May of 2001,[4] including three positions in the purchasing group. At the time, the purchasing

group consisted of six employees—Ploscowe, Gary Saylor, Don Amburgey, Jim Carr, Tom Brunner,

and Lee Harper. The age and seniority of the six buyer/planners working for KBC in April of 2001

are as follows:

1. Don Amburgey, age 64, date of hire 03/17/1986

2. Bob Ploscowe, age 55, date of hire 05/15/1995

---

[2]At various points in the parties' briefs, Harper is listed as 40 years old at the time he was hired. There is a chart in the record stating that Harper was age 40 at the time of hire; however, according to the same chart, Harper was hired on 03-12-01 and his birthday is 10-24-61; thus making him 39 years old at the time he was hired by KBC. JA 366-67.

[3]Ploscowe points to the apparent inconsistency in the testimony of KBC officials, who stated (1) that Lee Harper was hired because of a spike in business and (2) that a severe economic downturn necessitated an RIF approximately one month later. KBC argues that these statements are not inconsistent because demand in one area of business, that of spare parts, was increasing and there was promise that new contracts would materialize. However, KBC alleges, these contracts did not come through, and the business "continued to spiral downward."

[4]Eleven additional employees were terminated in August 2001, and, during the course of 2001-2003, the total workforce of KBC was reduced by forty percent.

*No. 03-4341*
*Ploscowe v. Kadant, et al*

      3. Gary Saylor, age 53, date of hire 06/1/1988

      4. Tim Carr, age 50, date of hire 03/31/1986

      5. Tom Brunner, age 45, date of hire 11/26/1979

      6. Lee Harper, age 39, date of hire 03/12/2001

Of the six employees in the purchasing department, the three oldest members—Ploscowe, Amburgey, and Saylor—were selected for termination.

On November, 27, 2001, Ploscowe filed suit against KBC, alleging that his termination was motivated by religious and age discrimination and was in retaliation for his prior reports of discrimination. KBC claims that Ploscowe was selected for termination because of his abrasive attitude and history of poor performance.

The district court held that Ploscowe had failed to establish a *prima facie* case of religious discrimination and retaliation. It assumed that Ploscowe could establish a prima facie case of age discrimination; however, it found that Ploscowe had failed to establish that KBC's reasons for Ploscowe's termination were pretextual. The district court thus granted KBC's motion for summary judgment on all counts.

- 5 -

*No. 03-4341*
*Ploscowe v. Kadant, et al*

## II. Analysis

Ploscowe appeals the district court's grant of summary judgment on his claims of religious

discrimination, age discrimination, and retaliation, brought under federal law, and his parallel claims

brought under Ohio statutory and common law.  However, because Ploscowe has failed to establish

a prima facie case of religious discrimination and retaliation, and because he has failed to establish

that KBC's proffered reasons for his termination were pretextual, the grant of summary judgment

was proper as to all counts.

The district court's grant of summary judgment is reviewed *de novo*. *Valentine-Johnson v.*

*Roche*, 386 F.3d 800, 807 (6th Cir. 2004).  "Summary judgment is proper where there exists no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  In

considering a motion for summary judgment, the district court must construe all reasonable

inferences in favor of the nonmoving party." *Id.* (internal citations omitted).  Ultimately, the court

must decide "whether the evidence presents a sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty*

*Lobby, Inc.* 477 U.S. 242, 251-252 (1986).

### A. Religious Discrimination

Ploscowe alleges that his termination was motivated by religious discrimination, in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  Because Ploscowe has failed

to establish a prima facie case of religious discrimination, we affirm the grant of summary judgment

on this count.

- 6 -

*No. 03-4341*
*Ploscowe v. Kadant, et al*

Ploscowe claims that, as the only Jewish employee of KBC, he was subjected to negative comments about his religion and was otherwise stigmatized for his religious beliefs. Ploscowe cites several incidents as evidence of the discrimination he experienced. First, Ploscowe claims that KBC had a practice of placing Christmas decorations in the lobby of the Middletown facility. When Ploscowe asked for the opportunity to decorate for Hanukkah, he alleges that Ken Stiers, the Director of Human Resources, replied "'If you want Hanukkah decorations, you go out and buy them yourself and put them up yourself.'" Next, Ploscowe alleges that Stiers and other employees told Jewish jokes in his presence and that other employees treated him in a "standoffish" manner. On one occasion, a co-worker told Ploscowe something to the effect of "Your people killed my God." In addition, shortly after beginning to work for KBC, Tom Graziano, one of Ploscowe's supervisors, displayed a Nazi flag in his office. Ploscowe claims that when he complained to Stiers about the presence of the flag, Stiers responded by saying, "Oh, Bob, that's Tom. Thicken up your skin." Finally, Ploscowe claims that in early 2001, Vice-President of Operations Steve Weatherly, who was in a direct line of management over Ploscowe, handed out crosses to various employees in his department, but did not give one to him. Ploscowe claims that these facts, both individually and cumulatively, led to his belief that he was being "singled out" because of his Jewish faith.

To survive a motion for summary judgment based on a claim of discrimination under Title VII, a plaintiff must present either direct evidence of discrimination or circumstantial evidence from which a jury could infer discrimination. In the present case, Ploscowe has presented no evidence of direct discrimination. Therefore, his claim is properly analyzed using the burden-shifting framework

*No. 03-4341*
*Ploscowe v. Kadant, et al*

set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under *McDonnell Douglas*, the plaintiff must show the following: (1) that he was a member of a protected class, (2) that he was subjected to an adverse employment action, (3) that he was qualified for the position, and (4) that he was replaced by a worker outside of the protected class. *Id.* at 802. In an RIF situation, however, the plaintiff need not prove the fourth element because, in such circumstances, the plaintiff will necessarily not be replaced. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999) (internal citations omitted). "Instead, the plaintiff must present 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons.'" *Id.* (internal citations omitted). If a prima facie case is established, then the burden shifts to the defendant to demonstrate a non-discriminatory reason for the discharge, which, in this case "will necessarily be the alleged reduction in force. The burden then returns to he plaintiff to demonstrate that the defendant's proffered reason is pretextual." *Id.* (internal citations omitted).

In the present case, the parties appear to agree that Ploscowe has demonstrated the first three elements of a prima facie case—that he was Jewish, that he was fired, and that he was qualified for the position. However, KBC urges that Ploscowe has not demonstrated the fourth element of a prima facie case because he has not produced additional direct, circumstantial, or statistical evidence demonstrating that Ploscowe's Jewish faith was a motivating factor in his termination.

Although Ploscowe describes all of the various incidents as acts of religious discrimination, none of the incidents involved an adverse employment action and, thus, they cannot form the basis

No. 03-4341
*Ploscowe v. Kadant, et al*

of his religious discrimination claim.[5] However, Ploscowe may rely on the incidents as background evidence used to support his claim of religious discrimination based upon his discharge, the only incident amounting to an adverse employment action.[6]

The incidents, even viewed in the light most favorable to Ploscowe, do not support an inference that his discharge was motivated by religion. First, Ploscowe alleges that his then-supervisor, Tom Graziano, brought a Nazi flag to the workplace. However, it does not appear that the presence of the flag was motivated by religious animosity against the Jewish faith. Rather, it appears that Gaziano was a collector of war memorabilia who brought the flag to work for purposes of obtaining help in getting it framed. In addition, after Ploscowe complained about the flag, KBC took appropriate action by discussing the situation with Graziano, who took the flag home that day.

The incident where a coworker told Ploscowe that "your people killed my God" also fails to show that Ploscowe was fired for religious reasons. The comment was made by a co-worker who had no supervisory power over Ploscowe and who played no part in the decision to terminate his employment. Under such circumstances, no inference of age discrimination can be drawn. *See*

---

[5]Ploscowe's complaint did not set forth a hostile working environment claim.

[6]The incidents involving the Nazi flag and the comment "your people killed my God" occurred, at the latest, in 1999. The plaintiff did not file his complaint with the EEOC until 2001. Under Title VII, a plaintiff has up to 180 days, or in a deferral state such as Ohio, up to 300 days, to file a complaint after the allegedly unlawful employment practice has occurred. 42 U.S.C. § 2000e-5(e)(1). However, despite the fact that the incidents involving the Nazi flag and the comment that "your people killed my God" occurred outside this the 300 day time limitation, they may still be considered "as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

No. 03-4341
*Ploscowe v. Kadant, et al*

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998) (stating that "[a]n

isolated discriminatory remark made by one with no managerial authority over the challenged

personnel decisions is not considered indicative of age discrimination"). In addition, Ploscowe never

complained about the comment to anyone at KBC. Because Ploscowe never complained and

because the co-worker in question played no part in the decision to terminate him, this incident does

not create an inference that religious discrimination motivated KBC to terminate Ploscowe.

Ploscowe's allegation that he was subjected to numerous Jewish jokes throughout his

employment is also insufficient to demonstrate religious discrimination. Ploscowe stated that

numerous people at KBC told Jewish jokes; however, the only person he could name was Ken Stiers,

the director of Human Resources. Significantly, while Stiers did inform Ploscowe of his termination

and explain possible benefits, Stiers did not participate in the decision to terminate Ploscowe.

Ploscowe's next allegation is that he was treated in a generally "standoffish" manner by many

KBC employees. Ploscowe, however, does not elaborate on what made him feel this way, or

whether he felt that he was treated in a "standoffish" manner by anyone responsible for the decision

to terminate his employment. In addition, Ploscowe points to no evidence that would support an

inference that the "standoffish" treatment by his co-workers was a result of his religion and not of

some other factor, such as general personality disagreements. Thus, the fact that Ploscowe was

treated in a "standoffish" manner does not support his claim of religious discrimination.

Ploscowe further alleges that when he did complain about religious discrimination, he

received little support from KBC management. He appears to primarily base this claim upon his

*No. 03-4341*
*Ploscowe v. Kadant, et al*

assertion that, when he complained to Stiers about the Nazi flag incident, Stiers responded by stating, "[o]h, Bob, that's Tom. Thicken up your skin," and that he was once told to "watch [his] language" after saying the word "dammit." Ploscowe argues that these incidents demonstrate that he was "pooh-poohed" when he complained about situations that offended his religious beliefs, while he was reprimanded for engaging in conduct that offended others' beliefs. The evidence, however, indicates that, after Stiers complained about the Nazi flag, KBC management discussed the incident with Graziano, and that the flag was taken home shortly thereafter. The evidence does not support Ploscowe's claim that he was not taken seriously when he complained of discrimination.

Finally, the incident involving Steve Weatherly's handing out of crosses to various employees at KBC is not evidence of religious discrimination. The actions of Weatherly, who has subsequently left his employment with KBC to attend Asbury Theological Seminary, were clearly motivated by Weatherly's religious faith; however, this fact alone is insufficient to support an inference that Weatherly held any ill-will towards Ploscowe because of Ploscowe's religion or that any such ill-will prompted his firing.

For the foregoing reasons, plaintiff has failed to establish a prima facie case of religious discrimination. Thus, the grant of summary judgment was proper as to that claim.

**B. Retaliation**

Ploscowe also alleges that his termination was in retaliation for making prior complaints of discrimination. Because Ploscowe has failed to establish a prima facie case of retaliation, the district court properly granted summary judgment on this count.

- 11 -

*No. 03-4341*
*Ploscowe v. Kadant, et al*

Ploscowe made a complaint of discrimination to KBC officials after he was initially chosen for termination in November, 2000. However, the plan to decentralize the department was abandoned, and the plaintiff was not terminated at that time. On March 16, 2001, Arbogast, Ploscowe's immediate supervisor, came to see Ploscowe about "a recent attitude problem." In response, Ploscowe told Arbogast about his discrimination claims. Ploscowe claims that this was the first time that Arbogast learned of his allegations of discrimination. The plaintiff was terminated approximately two months later. It is this sequence of events upon which Ploscowe relies to support his retaliation claim.

To establish a prima facie case of retaliation, the plaintiff must establish "that: (1) he engaged in an activity protected by Title VII; (2) the defendant knew he engaged in this protected activity; (3) thereafter, the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action." *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004) (citation omitted). The parties agree that Ploscowe has established the first three elements. Thus, the only issue on review is whether there was a causal connection between the protected activity and the adverse employment action.

To establish a causal connection, Ploscowe must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had he not engaged in protected activity. *Jackson v. RKO Bottlers*, 743 F.2d 370, 377 (6th Cir. 1984). The protected activity upon which plaintiff relies to establish his claim of retaliation consists of complaints of discrimination he made to KBC, beginning in November of 2000. KBC notes, however, that these

No. 03-4341
*Ploscowe v. Kadant, et al*

complaints were made after, and in response to, the fact that he was chosen as the sole employee to be terminated as a result of the decision to decentralize the purchasing department. However, before he ever complained of any type of discrimination, Ploscowe was chosen for termination when a business decision required the elimination of one buyer position. It is not surprising that Ploscowe was again chosen for termination when an RIF necessitated laying off half of the purchasing department six months later. In addition, it does not appear that Ploscowe's performance or attitude changed significantly over the period between his initial selection for termination and the subsequent decision to terminate the plaintiff. As a result, Ploscowe has failed to demonstrate that KBC would not have terminated him if he had not made the reports of discrimination. Thus, he has failed to establish a prima facie case of retaliation, and the grant of summary judgment was proper.

**C. Age Discrimination**

Ploscowe also claims that his termination was motivated by age discrimination. Specifically, Ploscowe claims that his termination demonstrates that he was discriminated against because he was the second oldest person laid off in the purchasing department and because all of the individuals who were laid off were over 50 years old. While we assume *arguendo* that Ploscowe has established a prima facie case of age discrimination, the grant of summary judgment was proper because he has failed to show that the legitimate reasons given by KBC for his termination were pretextual.

In analyzing claims under the Age Discrimination in Employment Act (ADEA), the court uses the same burden shifting framework used to analyze a claim brought under Title VII. *Godfredson*, 173 F.3d at 371. To establish a prima facie case of age discrimination under the ADEA,

- 13 -

*No. 03-4341*
*Ploscowe v. Kadant, et al*

the plaintiff must show (1) that he was over 40; (2) that he was qualified for the job he held; (3) that

he suffered an adverse employment action; and, in the case of an RIF, (4) additional direct or

circumstantial evidence which demonstrates that the employer was motivated by Ploscowe's age in

making its decision. *Id.* The parties do not dispute that Ploscowe has established the first three

requirements. The only issue remaining is whether additional direct or circumstantial evidence exists

which demonstrates that Ploscowe's termination was motivated by his age. Because Ploscowe has

put forth evidence indicating that the three oldest members of the purchasing department were

chosen for termination and because Lee Harper, a younger employee who began working for KBC

only a few months before the RIF, was retained over Ploscowe, we will assume, without deciding,

that Ploscowe has established a prima facie case of age discrimination.

The burden then shifts to KBC to provide a legitimate non-discriminatory reason for

Ploscowe's termination. KBC has met this burden by alleging that the RIF resulted in the need to

lay employees off generally and that the plaintiff's poor performance and abrasive attitude were the

motivating factors behind selecting him specifically. Therefore, the burden shifts back to Ploscowe

to show that the reasons articulated by KBC are pretextual.

The plaintiff may prove pretext in one of three ways: (1) by showing that the defendant's

reasons had no basis in fact; (2) by showing that the proffered reasons did not actually motivate the

defendant; or (3) by showing that the proffered reasons were not sufficient for the defendant to act

No. 03-4341
*Ploscowe v. Kadant, et al*

as it did.[7] *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 346 (6th Cir. 1997). When proving pretext

by the first or third method, discrimination may be inferred from the circumstances. *Id.* In the

second situation, however, the plaintiff is not challenging the veracity of the factual allegations put

forth by the defendant and thus, the plaintiff must produce additional evidence of discrimination in

order to prevail. *Id.* at 346-47.

Ploscowe argues that KBC's allegations that it fired him because of his poor performance and

abrasive attitude are pretextual because (1) he was placed on a performance improvement plan

("PIP") in September of 2002 which made no mention of his abrasive personality; (2) he completed

all objectives of the PIP within 30 days; (3) KBC failed to follow its own RIF policy by not

considering seniority when deciding who to terminate and by not considering him for transfer; and

(4) KBC gave inconsistent reasons for why Harper was hired. Even viewed in the light most

favorable to the plaintiff, however, these facts do not demonstrate pretext.

First, Ploscowe argues that KBC's decision to terminate him was pretextual because it placed

him on a PIP that was supposed to address all significant areas of concern, but that did not mention

---

[7]KBC argues that, on appeal, this court should only analyze pretext using the first and third prongs of the test set forth above, because, at the district court level, Ploscowe only asserted that pretext could be demonstrated under those particular prongs. Appellee's Br. 35 (citing plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment 132). It is true that this court often will not reach arguments on appeal that were not raised in the district court. *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 759 (6th Cir. 1999). However, in this case, it appears that the district court did not limit its analysis of pretext to the first or third prongs of the test set forth above. Instead, the district court appeared to engage in a general analysis, and indeed, appeared to reject a showing of pretext under the second prong by finding that Ploscowe's poor performance was in fact what motivated KBC to terminate Ploscowe's employment. We therefore do not restrict our review of pretext to the first and third prongs of the test articulated above.

*No. 03-4341*
*Ploscowe v. Kadant, et al*

anything about his abrasive personality. KBC has always asserted, however, that it chose Ploscowe for elimination because of his abrasive personality *and his poor performance*. Thus, the fact that Ploscowe was placed on a PIP supports KBC's arguments that Ploscowe was deficient in his job performance, and, thus, militates against Ploscowe's argument of pretext. In addition, Ploscowe's performance reviews, and the deposition testimony of Ploscowe's co-workers, all note the difficulties he had with interpersonal communication in the workplace. Thus, the fact that his abrasive personality was not mentioned in the PIP does not support an inference that KBC's explanation for his termination was pretextual.

Second, Ploscowe argues that he completed all objectives of the PIP within thirty days and, thus, he had addressed all significant areas of concern. While the follow-up to the PIP does state that Ploscowe had improved his performance at the one month mark, KBC officials explained that "within two or three months . . . [they] started to see things going the wrong direction again." JA 245. Therefore, the fact that Ploscowe had improved his performance for one month does not indicate that KBC's reasons for firing him were pretextual. This is especially true where the company was forced to lay off half of the purchasing department due to a RIF and Ploscowe was an employee with a history of performance problems and an abrasive attitude.

Third, Ploscowe argues that KBC's reasons for firing him were pretextual because they did not follow their own policy for determining who to terminate as a result of the RIF. The policy to which Ploscowe refers states that, when comparing employees "in the same classification, the main criterion is job performance, although length of service must be recognized and considered." JA 835.

- 16 -

No. 03-4341
*Ploscowe v. Kadant, et al*

Ploscowe claims that KBC violated this policy because it failed to consider Ploscowe's six years of seniority. While an employer's deviation from established layoff procedures can be viewed as evidence of pretext, *Skalka v. Fernald Env. Rest. Mgt. Corp.*, 178 F.3d 414, 422 (6th Cir. 1999), in the present case, such an inference is not warranted. Notably, KBC policy states that, when determining whom to discharge, the "main criterion" to be considered is job performance—exactly what KBC relied on in selecting Ploscowe for termination. In addition, even if KBC had considered Ploscowe's seniority, he still would have been terminated pursuant to the RIF. Of the six members of the purchasing group, Ploscowe ranked next to last in level of seniority. Since three members had to be terminated, Ploscowe would have been one of the three chosen even if KBC had proceeded solely on the basis of seniority. Thus, the fact that KBC did not consider Ploscowe's seniority does not appear to support an inference of pretext.

Ploscowe also contends that KBC violated its policy by failing to consider Ploscowe for other positions within the company. The policy at issue states that "[c]onsideration be made of other jobs [to which] a member might be transferred." However, the policy also requires that when considering an individual for transfer, "[t]he overall good of the [company] must be the primary guideline." Given Ploscowe's history of poor job performance and abrasive attitude, KBC's determination that transferring him to another position would not be in the best interest of the company was reasonable. This is especially true where KBC was already being forced to terminate a substantial proportion of its workplace due to the RIF. Transferring the plaintiff at this time would simply have resulted in

- 17 -

No. 03-4341
*Ploscowe v. Kadant, et al*

another KBC employee losing his or her job. Failure to take this course of action does not warrant

an inference that KBC's reasons for Ploscowe's termination were pretextual.

Finally, Ploscowe argues that KBC has given inconsistent reasons for why it hired Lee Harper

in March of 2001, and that this inconsistency provides evidence of pretext. Ploscowe argues that

manager Steve Arbogast stated that Harper was hired because of a spike in business, while Human

Resource Director Ken Stiers stated that no such spike had occurred and that Harper was hired to

replace a departing employee. While there does appear to be some inconsistency in hiring an

individual a few months before an RIF is needed, this fact alone is not enough to support a finding

of pretext.

In conclusion, the legitimate reasons given by KBC for Ploscowe's termination—his poor

performance and abrasive attitude—appear amply supported in the record. None of the factors cited

by Ploscowe sufficiently supports an inference that these proffered reasons were pretextual. Thus,

the grant of summary judgment on this count was proper.

**D. State Law Claims**

Ploscowe's complaint also sets forth parallel claims of religious discrimination, age

discrimination, and retaliation under Ohio statutory law. These claims, brought under O.R.C. § 4112,

are subject to the same evidentiary standards as those brought under Title VII or the ADEA. *Little*

*Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.*, 575 N.E.2d 1164, 1167 (Ohio 1991); *see also*

*Jones v. Kilbourne Med. Lab.*, 162 F.Supp.2d 813, 831 n.20 (S.D. Ohio 2000) (noting the "substantial

similarity" of claims brought under Title VII and those brought under Ohio statutory and common law

- 18 -

*No. 03-4341*
*Ploscowe v. Kadant, et al*

and finding that "judicial economy counsels in favor of resolving them together").  Because the

plaintiff's claims under Ohio state law are subject to the same analysis used for the discrimination

claims brought under federal law, the grant of summary judgment as to these claims was also proper.

Finally, Ploscowe alleges wrongful discharge in violation of Ohio public policy.  To establish

a wrongful discharge in violation of public policy under Ohio law, Ploscowe must show that (1) a

clear public policy exists; (2) his dismissal would jeopardize that public policy; (3) his termination

was motivated by conducted related to the public policy; and (4) the employer lacked an overriding

legitimate business justification for the dismissal.  *Collins v. Rizkana*, 652 N.E.2d 653, 657-58 (Ohio

1995).

Federal and Ohio state law clearly prohibit discrimination and retaliation for reporting

discrimination.  However, Ploscowe has failed to establish (1) that his termination was motivated by

discrimination or retaliation and (2) that there was no legitimate justification for his dismissal.  Thus,

the grant of summary judgment on this count was proper.

## III.  Conclusion

Ploscowe has failed to establish a prima facie case of religious discrimination and retaliation

and has failed to show that the legitimate reasons given by KBC for his termination were pretextual.

Thus, the grant of summary judgment is AFFIRMED.